**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

FILED
U.S. DISTRICT COURT

2023 MAR 22  A 10: 05

CLERK
SO. DIST. OF GA.

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Crim No. 1:18-cr-00074-JRH-BKE-1 |
| | ) |
| MARTY MARION COPELAND, | ,) |
| | ) |
| Defendant. | ) |

## MOTION FOR COMPASSIONATE RELEASE/REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND FIRST STEP ACT OF 2018

COMES Defendant, MARTY MARION COPELAND ("Copeland"), appearing *pro se,* and in support of this memorandum would show as follows:

### I. JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

## II. STATEMENT OF THE CASE

### A.   Procedural Background

On December 7, 2018, a grand jury sitting in the United States District Court for the Southern District of Georgia, Augusta Division, returned a three (3) count Indictment charging Copeland. See Doc. 3.[1] Count 1 charged Copeland with Possession with Intent to Distribute A Mixture or Substance Containing A Detectable Amount of Cocaine Hydrochloride, in violation of 21 U.S.C. § 841(a)(1). *Id.* Count 2 charged Copeland with Felon in Possession of A Firearm, in violation of 18 U.S.C. § 922(g)(1). *Id.* Count 3 charged Copeland with Possession of A Firearm in Furtherance of A Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). *Id.* The Indictment also contained Forfeiture Allegations, pursuant to 21 U.S.C. § 853. *Id.*

On March 26, 2019, the government filed a Sentencing Enhancement Information, requesting increased penalties pursuant to combined 21 U.S.C. § 851 ("851 Enhancement") and Fed. R. Evid. 404(B) Notice of Intent to Offer Proof of Other Crimes, Wrongs, and Acts. See Doc. 18.

On June 17, 2019, a Change of Plea Hearing was held and Copeland entered a guilty plea as to Count 2 of the Indictment pursuant to a written Plea Agreement. See Docs. 34-36.

On September 6, 2019, Copeland filed Motion to Withdraw Plea of Guilty, which was granted on September 27, 2019. See Docs. 42, 46.

On September 27, 2019, a Second Change of Plea Hearing was held and Copeland entered a guilty plea as to Count 1 of the Indictment pursuant to a Written Plea Agreement. See Docs. 47-49.

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Southern District of Georgia, Augusta Division, in Criminal No. 1:18-cr-00074-JRH-BKE-1, which is immediately followed by the Docket Entry Number.

On February 25, 2020, Copeland was sentenced to a term of 151 months' imprisonment, 3

years Supervised Release, $1,500 Fine, and a Mandatory Special Assessment Fee of $100. See Docs.

54-55.

On December 29, 2020, Copeland filed an Emergency Motion for Compassionate Release

on Home Confinement or Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). See Docs.

62, 66.

### B.   Statement of the Facts

#### 1.   Offense Conduct

The elements necessary to prove the offense charged in Count One are (1) that
Copeland knowingly possessed a detectable amount of cocaine hydrochloride, a
Schedule II controlled substance; and (2) that he intended to distribute the substance.

Copeland agrees that he is, in fact, guilty of this offense. He agrees to the accuracy
of the following facts, which satisfy each of the offense's required elements:

On or about January 19, 2018, in Richmond County, within the Southern District of
Georgia, the defendant, MARTY MARION COPELAND, did knowingly and
intentionally possess with intent to distribute a mixture or substance containing a
detectable amount of cocaine hydrochloride, a Schedule II controlled substance.

See Doc. 49 at 1-2.

#### 2.   Plea Proceeding

On June 17, 2019, a Change of Plea Hearing was held before Chief Judge J. Randal Hall.

See Doc. 34. Copeland initially pled guilty to Count 2 of the Indictment which would have only had

a statutory sentencing range of 0-10 years without the Armed Career Criminal enhancement. After

learning of the mandatory enhancement, Copeland sought leave to withdraw his plea and enter a new

negotiated plea to Count 1. At the time of the initial plea, Copeland was well aware that he would

likely get the statutory maximum of ten years, and he made his peace with that fate. However, the

3

new guideline range adds an additional 31 months to his sentence even on the low end of the guideline range. In exchange of his plea, Copeland received a 3-level reduction for his acceptance of responsibility and the government recommended to dismiss Counts 2 and 3 of the Indictment. See Doc. 49. The parties agreed Copeland was a career offender and predicted a career offender guideline range of Level 29 in Criminal History Category VI, yielding an advisory guideline range of 151 to188 months. See PSR ¶ 61.[2]

3.     Sentencing Proceeding

On February 25, 2020, a Sentencing Hearing was held before Chief Judge J. Randal Hall. See Doc. 54. At sentencing, the Court sentenced Copeland to a term of 151 months' imprisonment, followed by 3 years' Supervised Release. *Id.* The Court also ordered a payment of $1,500 Fine and a Mandatory Special Assessment Fee of $100. *Id.* No direct appeal was filed in this case.

## II. **DISCUSSION**

As a preliminary matter, Copeland respectfully requests that this Court be mindful that courts have a duty to construe *pro se* motions liberally. See *Caldwell v. Warden*, 748 F.3d 1090 (11th Cir. 2014); *Estelle v. Gamble*, 429 U.S. 97 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519 (1972) (same).

### A.     **Federal Courts Have the Jurisdiction and Power to Reduce An Existing Sentence**

This Court has the power to adjust Copeland's sentence. District courts no longer need a motion from the Bureau of Prisons to resentence a federal prisoner under the compassionate release

---

[2]

"PSR" refers to the Presentence Investigation Report, which is immediately followed by the paragraph ("¶") number.

provisions of 18 U.S.C. §3582(c)(1)(A)(i). A district court may now resentence if the inmate files

a motion after exhausting administrative remedies. The reasons that can justify resentencing are not

limited to medical, age, or family circumstances. A district court may resentence if the inmate

demonstrates extraordinary and compelling reasons for a sentence reduction. Such reasons are

present in this case.

        1.    Historical Framework

Congress first enacted the compassionate release provisions in 18 U.S.C. §3582 as part of

the Comprehensive Crime Control Act of 1984. That legislation provided that a district court could

modify a final term of imprisonment when extraordinary and compelling reasons warrant such a

reduction. 18 U.S.C. §3582(c)(1)(A)(i). In 1984, this provision was conditioned on the Bureau of

Prisons (BOP) filing a motion in the sentencing court. Absent a motion by the BOP, a sentencing

court had no jurisdiction to modify an inmate's sentence. Congress did not define what constitutes

an "extraordinary and compelling reason," but the legislative history recognized that the statute was

intended, in part, to abolish and replace federal parole. Rather than have the parole board review for

rehabilitation only, Congress authorized review for changed circumstances:

> The Committee believes that there may be unusual cases in which an eventual
> reduction in the length of a term of imprisonment is justified by changed
> circumstances. These would include cases of severe illness, cases in which other
> extraordinary and compelling circumstances justify a reduction of an unusually long
> sentence, and some cases in which the sentencing guidelines for the offense of which
> the defender was convicted have been later amended to provide a shorter term on
> imprisonment. S. Rep. No. 98-225 at 55-56 (1983).

18 U.S.C. § 3582 acts as a "safety valve" for the "modification of sentences" that would

previously have been addressed through the former parole system. *Id*. at 121. The provision was

intended "to assure the availability of specific review and reduction of a term of imprisonment for

"extraordinary and compelling reasons" and [would allow courts] to respond to changes in the guidelines." *Id.* Thus, sentencing courts have the power to modify sentences for extraordinary and compelling reasons.

> ### 2.   Section 3582(c)(1)(A) is Not Limited To Medical, Elderly or Childcare Circumstances

Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the United States Sentencing Commission. 28 U.S.C. § 994(t) ("The Commission…shall describe what should be considered "extraordinary and compelling reasons" for sentence reduction, including the criteria to be applied and a list of specific examples." Congress provided one limitation to that authority: "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Rehabilitation could, however, be considered with other reasons to justify a reduction.

In 2007, the Sentencing Commission defined "extraordinary and compelling reasons" as follows:

> (A)   Extraordinary and Compelling Reasons - Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the following circumstances:
>
> (i)   The defendant is suffering from a terminal illness.
>
> (ii)   The defendant is suffering from a permanent physical or medical condition, or is experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self care within the environment of a correctional facility and for which conventional treatment promises no substantial improvement.
>
> (iii)   The death or incapacitation of the defendant's only family member capable of caring for the defendant's minor child or minor children.
>
> (iv)   As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason for purposes of subdivision (1)(A). USSG §1B1.13, Application Note 1.

As we will see, with the passage of The First Step Act, subparagraph (iv) is no longer limited by what the BOP decides is extraordinary and compelling.

Historically, the BOP rarely filed motions under § 3582(c)(1)(A), even when the inmates met the objective criteria for modification. See U.S. Dep't of Justice Office of the Inspector General, The Federal Bureau of Prisons Compassionate Release Program (Apr. 2013). The Office of the Inspector General also found that the BOP failed to provide adequate guidance to staff on the criteria for compassionate release, failed to set time lines for review of compassionate release requests, failed to create formal procedures for informing prisoners about compassionate release, and failed to generate a system for tracking compassionate release requests. *Id.* at i-iv. Congress heard those complaints and in late 2018 enacted The First Step Act.

### 3.   The First Step Act

The First Step Act, P.L. 115-391, 132 Stat. 5194, at (Dec. 21, 2018), among other things, transformed the process for compassionate release. *Id.* at § 603. Now, instead of depending upon the BOP to determine an inmate's eligibility for extraordinary and compelling reasons and the filing of a motion by the BOP, a court can resentence "upon motion of the defendant." A defendant can file an appropriate motion if the he or she has exhausted all administrative remedies or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §3582(c)(1)(A). The purpose and effect of this provision is to give federal courts the ability to hear and resentence a defendant even in the absence of a BOP motion. Congress labeled this change "Increasing the Use and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358 (2018). Senator Cardin noted in the record that the bill "expands compassionate release under the Second Chance Act and expedites compassionate release applications." 164 Cong.

R. 199 at S7774 (Dec. 18, 2018). In the House, Representative Nadler noted that the First Step Act includes "a number of very positive changes, such as … improving application of compassionate release, and providing other measures to improve the welfare of federal inmates." 164 Cong. R. H10346-04 (Dec. 20, 2018).

Once an inmate has pursued administrative remedies through the BOP, upon his or her motion, the sentencing court has jurisdiction and the authority to reduce a sentence if it finds "extraordinary and compelling reasons" to warrant a reduction. Judicial authority is no longer limited to cases that have the approval of the BOP.

4.    Copeland Has Exhausted Administrative Remedies

A motion by an inmate can be filed in the district court after (1) the inmate has made the request to the Warden, and (2) either the request was denied or 30 days have lapsed from the receipt of the request, whichever is sooner. First Step Act of 2018, section 803(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).

Copeland has filed a request for compassionate release to the Warden at FCI Edgefield, but he has not received a response yet. Because 30 days have lapsed from the receipt of the request and the BOP failed to file a motion on Copeland's behalf, exhaustion of administrative remedies is not an issue in this case. See 18 U.S.C. § 3582(c)(1)(A).

B.    **The Changes in Relevant Law, along with Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct, Are Extraordinary and Compelling Circumstances That Warrant Release.**

Section 3582(c) states that a district court cannot modify a term of imprisonment once it has been imposed except that, in any case:

The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A).

In this case, there are at least four extraordinary and compelling reasons warranting such a reduction, discussed as follows:

1.      First Step Act of 2018: Sentencing Reform

The First Step Act makes several changes to federal sentencing law. The act reduced the mandatory minimum sentences for certain drug offenses, expanded the scope of the safety valve, eliminated the stacking provision, and made the provisions of the Fair Sentencing Act of 2010 (P.L. 111-220) retroactive.

The act adjusts the mandatory minimum sentences for certain drug traffickers with prior drug convictions. The act reduces the 20-year mandatory minimum (applicable where the offender has one prior qualifying conviction) to a 15-year mandatory minimum and reduces the life sentence mandatory minimum (applicable where the offender has two or more prior qualifying convictions) to a 25-year mandatory minimum. The act also changes the prior conviction criteria under which these mandatory minimum penalties apply. In order for these mandatory minimums to apply, the offender's prior convictions must meet the new criteria of a serious drug felony or a serious violent felony rather than any felony drug offense.

9

A "serious drug felony" is defined as an offense described in 18 U.S.C. Section 924(e)(2)—which encompasses only drug felonies that carry a maximum prison term of 10 years or more—for which the offender served a term of imprisonment of more than 12 months and the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense. Before the First Step Act, any prior conviction for a felony drug offense (meaning a drug offense with a maximum term of imprisonment of more than one year) counted for purposes of the repeat offender mandatory minimums.

A "serious violent felony" is defined as an offense described in 18 U.S.C. Section 3559(c)(2) for which the offender served a term of imprisonment of more than 12 months and any offense that would be a felony violation of 18 U.S.C. Section 113 if the offense were committed in the special maritime and territorial jurisdiction of the United States, for which the offender served a term of imprisonment of more than 12 months. Before the First Step Act, only drug felony convictions counted for purposes of the repeat offender mandatory minimums.

2.    Erroneous Application of the Career Offender

In this case, Copeland was classified as a career offender because he was at least 18 years old at the time he committed the instant offense of conviction; and has at least two prior felony convictions of either a crime of violence or a controlled substance offense, to wit:

(1)    May 15, 1998: Felony Possession of Cocaine in Richmond County, State of Georgia (Case No. 98RCCR229);

(2)    July 23,1998: Felony Possession of Cocaine in Richmond County, State of Georgia (Case Nos. 95RCCR1400, 98RCCR604);

(3)    May 26, 2000: Felony Possession of Cocaine With Intent to Distribute in Richmond County, State of Georgia (Case No. 00RCCR153); and

10

(4)     July 13, 2007: Felony Trafficking In Cocaine in Richmond County, State of
        Georgia (Case No. 2007RCCR0457).

See Doc. 18.

*Official Code of Georgia Annotated § 16-13-30 (2010)*

16-13-30. Purchase, possession, manufacture, distribution, or sale of controlled substances

or marijuana; penalties

(a)     Except as authorized by this article, it is unlawful for any person to purchase,
        possess, or have under his control any controlled substance.

(b)     Except as authorized by this article, it is unlawful for any person to
        manufacture, deliver, distribute, dispense, administer, sell, or possess with
        intent to distribute any controlled substance.

(c)     Except as otherwise provided, any person who violates subsection (a) of this
        Code section with respect to a controlled substance in Schedule I or a narcotic
        drug in Schedule II shall be guilty of a felony and, upon conviction thereof,
        shall be punished by imprisonment for not less than two years nor more than
        15 years. Upon conviction of a second or subsequent offense, he shall be
        imprisoned for not less than five years nor more than 30 years.

(d)     Except as otherwise provided, any person who violates subsection (b) of this
        Code section with respect to a controlled substance in Schedule I or Schedule
        II shall be guilty of a felony and, upon conviction thereof, shall be punished
        by imprisonment for not less than five years nor more than 30 years. Upon
        conviction of a second or subsequent offense, he or she shall be imprisoned
        for not less than ten years nor more than 40 years or life imprisonment. The
        provisions of subsection (a) of Code Section 17-10-7 shall not apply to a
        sentence imposed for a second such offense; provided, however, that the
        remaining provisions of Code Section 17-10-7 shall apply for any subsequent
        offense.

(e)     Any person who violates subsection (a) of this Code section with respect to
        a controlled substance in Schedule II, other than a narcotic drug, shall be
        guilty of a felony and, upon conviction thereof, shall be punished by
        imprisonment for not less than two years nor more than 15 years. Upon
        conviction of a second or subsequent offense, he shall be punished by
        imprisonment for not less than five years nor more than 30 years.

O.C.G.A. §§ 16-13-30(a)-(e).

11

In *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), defendant Hinkle appealed his sentence, contending that the district court erred in determining that he was a career offender within the meaning of USSG § 4B1.1(a). Hinkle argued that neither of his prior Texas convictions, one for burglary and the other for delivery of a controlled substance, constituted a predicate offense under the career-offender guidelines provision. The Court's decision turned upon whether the particular Texas statutes at issue were divisible such that a court may use the modified categorical approach to determine whether a defendant convicted under Texas law of knowingly delivering a controlled substance was convicted of delivery by one of the particular means proscribed under Texas law. In light of the Supreme Court's recent decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016), the *Hinkle* Court concluded that his conviction for delivery of a controlled substance is not a "controlled substance offense" within the meaning of the Guidelines, and therefore, the career-offender enhancement did not apply based on the record presently before the Court. The Court vacated Hinkle's sentence and remanded for resentencing without the career offender Guideline enhancement.

The question in this case is whether the Georgia statutes under which Copeland was convicted are "divisible." *See, e .g .*, *Descamps v. United States*, 133 S.Ct. 2276, 2281 (2013). A statute is "divisible" when it "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile." *Id.*

As the Supreme Court explained in *Descamps*:

"[i]f one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction."

*Id.* In essence, although, Copeland has been convicted under O.C.G.A. § 16-13-30 (without indicating the specific subsection), which includes additional elements not included in the Controlled Substance Act of 21 U.S.C. § 841(a)(1).

O.C.G.A. § 16-13-30 encompasses substances that are not included on the schedules to the CSA; therefore, not all convictions under the Georgia statute categorically constitute aggravated felonies involving drug trafficking crimes. See *Descamps*, 570 U.S. at 261, 133 S.Ct. 2276.

Copeland asserts that his prior state felony convictions for possession of cocaine with intent to distribute and possession of cocaine under O.C.G.A. § 16-13-30 do not qualify as predicate offense to enhance his sentence under § 4B1.4, because O.C.G.A. § 16-13-30's list of controlled substances in its Schedules I and II are means of committing the offense rather than different elements and therefore the statute is indivisible as to the identity of the controlled substance. Hence, it does not violate the Controlled Substance Act under 21 U.S.C. § 801 et seq.

It is "easy" to determine whether a statute sets forth alternative elements or means where "the statute on its face" resolves the issue or "a state court decision definitively answers the question." *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016). In *Guillen*, the Eleventh Circuit analyzed whether a Florida statute that contained a list of controlled substances, like the Georgia statute here, set forth alternative elements or means. *Guillen*, 910 F.3d at 1179-84. We looked to Florida case law because, as is also true here, "the statute on its face fail[ed] to provide a clear answer on divisibility." *Id.* at 1181-82. We held that Florida case law implied that the statute was divisible because it permitted a defendant to be convicted of "both possession of marijuana and possession of a hallucinogenic drug, even though the offenses were merely different facets of the same transaction." *Id.* at 1182 (internal quotation marks omitted). The same is true of Georgia case

law's treatment of § 16-13-30(b) and (d). Section 16-13-30(b) makes it unlawful "for any person to ... possess with intent to distribute any controlled substance." O.C.G.A. § 16-13-30(b). Subsection (d) provides that "any person who violates subsection (b) of this Code section with respect to a controlled substance in Schedule I or Schedule II shall be guilty of a felony." *Id.* § 16-13-30(d). In *Tabb v. State*, the Georgia Supreme Court held that Georgia could charge and convict a defendant in separate counts for simultaneous possession of three different Schedule II controlled substances. 250 Ga. 317, 297 S.E.2d 227, 230 (1982). The Court expressly rejected *Tabb*'s contention that the illegal possession of several controlled substances amounted to a single offense. *Id.* Analyzing the language of the statute and Georgia law, the Georgia Supreme Court determined that "simultaneous possession of each of the controlled substances listed in Schedule II ... is a separate offense for which the legislature meant to impose punishment." *Id.* Where the state's highest court "has told us that the elements of possession of [several controlled substances] are different, it has implicitly told us that the identity of the substance possessed is an element of possession." *Guillen*, 910 F.3d at 1182. Because the Georgia Supreme Court has told us that possession of each of the "controlled substances listed ... is a separate offense," that settles the matter: the identity of the controlled substances in § 16-13-30 is an element of the offenses criminalized in that statute. *Tabb*, 297 S.E.2d at 230 ; see *Guillen*, 910 F.3d at 1182. We therefore conclude that § 16-13-30 is divisible, and the modified categorical approach applies.

A divisible statute is one that "comprises multiple, alternative versions of a crime." *Id.* at 2284. The difficulty of this situation is that the sentencing court must determine which version of the crime the defendant was convicted of, without engaging in the type of fact finding that the Sixth Amendment requires be done by a jury. The Supreme Court's solution to this difficulty is to allow

the sentencing court to refer only to *Shepard* documents to determine which version of the crime the defendant was convicted of. *Shepard* documents include "the charging document,... a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or ... some comparable judicial record of this information." *Shepard*, 544 U.S. at 26, 125 S.Ct. at 1263.

Under *Shepard* and *Descamps*, a sentencing court may not rely on a PSR from an unrelated proceeding in place of a *Shepard* document. It is not a charging document, a plea agreement or colloquy, or a comparable judicial record. See *Shepard*, 544 U.S. at 26, 125 S.Ct. at 1263. To allow the use of the PSR in the manner advocated by the Government would be inconsistent with the Court's holding in *Descamps* that, "when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment." See *Descamps*, 133 S.Ct. at 2288.

See also, *United States v. Tanksley*, 838 F3d 347 (5th Cir. 2017). In *Tanksley*, Dantana Tanksley was previously convicted in Texas under Section 481.112(a) of the Texas controlled substances act of possessing with intent to distribute a controlled substance. He was later enhanced as a career offender under federal sentencing guidelines. The sentencing guidelines define the term "controlled substance offense" by looking at what constitutes a federal controlled substance offense. If the elements of a state prior conviction are broader than federal controlled substance laws, the prior conviction will not qualify the person as a career offender. The federal career offender enhancement, if applicable, greatly increases an individual's sentence.

The Fifth Circuit held that application of the career offender enhancement in *Tanksley*'s case was improper because the Texas offense of possession with intent to distribute is broader than a generic federal substance offense. This is because Texas law defines "delivery" as including an "offer to sell" drugs. Federal law does not prohibit an "offer to sell." The court was barred from looking at the indictment, plea papers, or actual conduct associated with Tanksley's Texas prior because of the Supreme Court's recent decision in *Mathis v. United States*, 136 S.Ct. 2243 (2016). *Mathis* clarified application of the categorical and modified categorical approaches.

"Because the modified categorical approach is inappropriate in this case, we cannot use it to 'narrow' Tanksley's conviction to 'possession with intent to deliver' a controlled substance. We instead look to Section 481.112(a) as a whole in determining whether his conviction thereunder qualifies as a controlled substance offense under the Guidelines. Section 481.112(a) 'criminalizes a greater swath of conduct than the elements of the relevant Guidelines offense.'" The case was remanded for resentencing.

Same relief should apply to Copeland because the court is barred from looking at the indictment, plea papers, or actual conduct associated with his Georgia prior convictions, hence, the modified categorical approach is inappropriate in this case to 'narrow' his predicate offense.

Here, Copeland's  July 13, 2007: Felony Trafficking in Cocaine is the only qualified "controlled substance offense". Therefore, his sentence cannot be enhanced under the career offender guideline if he does not have at least 2 prior convictions of either a "crime of violence" or "controlled substance offense". Accordingly, Copeland should be resentenced without the career offender enhancement.

2.      2-Level Firearm Enhancement Should Be Dismissed

Copeland's sentence was enhanced under by his conviction under U.S.S.G. § 2D1.1(b)(1). This judgment resulted in a 158-month sentence. As such, because he is actually innocent of said conviction, his gun enhancement should be dismissed and his sentence should be vacated.

The state of the law regarding the application of the firearm enhancement was well settled at the time of Copeland's sentencing. To justify this enhancement, the government bears the initial burden of showing, by a preponderance of the evidence, either "that the firearm was present at the site of the charged conduct or . . . that the defendant possessed a firearm during conduct associated with the offense of conviction." *United States v. Stallings*, 463 F.3d 1218, 1220–21 (11th Cir. 2006). But "the mere fact that a drug dealer possesses a firearm does not necessarily give rise to the firearms enhancement." *Id*. Rather, "the government must show that the firearm had some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Id*. (quotation marks omitted). In other words, the government must show "some nexus beyond mere possession." *Id*. After the government meets its initial burden, the burden shifts to the defendant, who must show that "a connection between the weapon and the offense was clearly improbable." *Id*. (quotation marks omitted).

Further, it was well established that the government was required to present "reliable and specific" evidence in support of a challenged sentencing enhancement. See *United States v. Newman*, 614 F.3d 1232, 1238 (11th Cir. 2010) ("A district court's factual findings used to support a sentencing enhancement must be based on reliable and specific evidence and cannot be based on speculation."). Courts may not "speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines." *United States v. Cataldo*, 171 F.3d 1316, 1321 (11th Cir. 1999) (quotation marks omitted).

In *United States v. Terrell Bailey,* No. 09-5631 (6th Cir. 2010), constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Craven*, 478 F.2d at 1333 (emphasis added). "Proof that 'the person has dominion over the premises where the firearm is located' is sufficient to establish constructive possession." *United States v. Kincaide*, {553 F.3d 945} 145 F.3d 771, 782 (6th Cir. 1998) (quoting *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993)), {2009 U.S. App. LEXIS 9}cert. denied, 525 U.S. 1166, 119 S. Ct. 1085, 143 L. Ed. 2d 86 (1999). However, "[p]resence alone cannot show the requisite knowledge, power, or intention to exercise control over the unregistered firearms." *United States v. Birmley*, 529 F.2d 103, 107-08 (6th Cir. 1976).

Our caselaw does not define "dominion". A consensus, however, has developed in federal and state courts "that where the defendant is in nonexclusive possession of premises on which [illicit contraband] [is] found, it cannot be inferred that he knew of the presence of such [contraband] and had control of [it], unless there are other incriminating statements or circumstances tending to buttress such an inference." Emile F. Short, Annotation, *Conviction of Possession of Illicit Drugs Found in Premises of which Defendant was in Nonexclusive Possession*, 56 A.L.R. 3d 948, § 4 (1974).

The corollary, demonstrated by our own caselaw discussed *infra*, is that nonexclusive possession does not establish "dominion over the premises" sufficient to show constructive possession. This axiom accords with the doctrinal development of the dominion-over-the-premises rule in the Sixth Circuit. The leading case, *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998).

18

With regard to firearm possession offenses, a person has constructive possession if he has ownership, dominion, or control over the contraband itself, or dominion over the premises in which the contraband is 'concealed'. To find constructive possession, however, more evidence than mere physical proximity of the defendant to the contraband is required. It is necessary that some nexus between the accused and the contraband be established. Mere presence in the area where the contraband is discovered or mere association with the property where it is located is insufficient to support a finding of possession. The physical proximity to the contraband and presence in the premises where the contraband is found cannot  show dominion over the premises sufficient to establish constructive possession of the contraband. This principle accords with the widely held rule that nonexclusive possession of the premises cannot establish constructive possession over items found within the premises.

It is essential to note that the authorities searched two residences (Copeland's residence and his neighbor's abandoned house). During the search, they seized cocaine and marijuana on the kitchen table at Copeland's house while the firearm was found inside the hole of the abandoned house. In sum, the weapon was found in a separate house and not within Copeland's property or premises.

As to whether the guns were possessed during relevant conduct, the other route for the government to justify a firearm enhancement, the record does not conclusively refute Copeland's allegations that they were not. See *Stallings*, 463 F.3d at 1220. Here, nothing in the record indicates that Copeland's drug-trafficking activities extended beyond his arrest in 2018. Without any evidence of temporal overlap between Copeland's drug-trafficking activities and the gun found in his neighbor's residence, the record does not show "that the firearm had some purpose or effect with

respect to the drug trafficking crime." *Stallings*, 463 F.3d 1220. Plus, Copeland asserts that he has

no fingerprints found on the firearm.

        3.      Unwarranted Sentence Disparities Among Defendants With Similar
                    Records Who Have Been Found Guilty of Similar Conduct

With respect to the need to avoid unwarranted sentencing disparities, Copeland's sentence

is now grossly disparate relative to Defendants with similar records who have been found guilty of

similar conduct, and was sentenced after the passage of the First Step Act of 2018.

Copeland urges the Court to consider the sentences of recent compassionate release grants:

*United States v. Hearron, 2020 WL 4569556, at \*1 (D. Ariz. Aug. 7, 2020)*
- FCI-Terre Haute
- 1992 sentenced to 5 life terms, career offender, marijuana and cocaine and 924©
- 82 years old, heart failure, atrial fibrillation, renal insufficiency, gout, hypertension, has pacemaker
- Care Level 3
- Hearron is 82 years old, i.e., at least 65 years old. He is experiencing a serious deterioration in physical or mental health because of the aging process and has served approximately 30 years of his life sentence
- Although Hearron was classified as a career criminal and was in a criminal history category IV when sentenced, the Court recognizes that currently drug trafficking defendants are often sentenced to lower terms of incarceration than when Hearron was sentenced.

*United States v. Wahid, 2020 WL 4734409, at \*1 (N.D. Ohio Aug. 14, 2020)*
- 120 months imprisonment for drugs, career offender
- Tested positive for COVID, FCI Elkton
- Finding "the risk of COVID-19 in combination with Wahid's overlong sentence" warrant release
- Not particularly vulnerable to the virus based on medical condition
- "Most compelling, however, is that if Wahid were sentenced today his sentence would be significantly shorter" since he would not be career offender

*United States v. Darby, 2021 WL 2463841, at \*2 (N.D. Ohio June 17, 2021)*
- "The Court acknowledges that Mr. Darby is vaccinated so he is at a reduced risk of contracting a serious form of COVID-19 but being vaccinated does not automatically preclude a defendant from demonstrating "extraordinary and compelling reasons" justifying a sentence modification"

- "The Court finds that Mr. Darby's health conditions, combined with his advanced age, are enough to demonstrate extraordinary and compelling reasons for a sentence reduction"
- FCI Gilmer, 170 months as career offender consecutive to state sentence, release date September 2030
- Had hypertension, cholesterol, asthma, pre-diabetes, obesity, kidney cancer
- "While it is true Mr. Darby has a lengthy criminal record, this argument is undercut by the disparity between Mr. Darby's current sentence, based on his classification as a "career offender," and what his sentence would be today under the Sixth Circuit's clarification of sentencing guidelines. It is well established that courts can consider non-retroactive changes in sentencing law when balancing the Section 3553(a) factors after finding that other factors establish eligibility.

*United States v. Perry, 2020 WL 7024915, at \*1 (E.D. Mich. Nov. 30, 2020)*
- 188-month sentence for drugs, has 3 years left
- Traumatic life
- 45 years old, overweight, drug use
- FCI Tallahassee
- Also cite her career offender designation
- Under case law no longer a career offender
- "Disparity created by the career offender designation constitutes an additional independent extraordinary and compelling reason for relief"

Copeland is now, in effect, to be re-sentenced today, after the passage of the First Step Act; and the need to avoid unwarranted sentencing disparities is to be assessed at the time of his sentencing today relative to those comparable offenders who have been sentenced following the passage of the First Step Act. Nor does the First Step Act's lack of retroactivity justify withholding sentencing relief given the overall purpose of the First Step Act amendments, which expressly allowed for the possibility for a sentence reduction based on an individualized assessment of the § 3553(a) factors and other criteria.

Copeland essentially argues that the unwarranted sentencing disparity factor must be determined only with reference to those comparably situated defendants who were sentenced at the time of Copeland's sentencing and those being sentenced today under a different sentencing

21

structure. Copeland's sentence in 2020 is now disparate relative to Defendants who were sentenced after December 21, 2018.

See e.g., *United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006) (recognizing that "a district court may consider disparities among co-defendants in determining a sentence"); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) ("Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."); *United States v. Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) (implying that consideration of co-defendant disparities is allowed, but concluding that Gomez was not similarly situated to the co-defendant); *United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) ("[A]voiding unwarranted sentencing disparities among co-defendants is a valid sentencing consideration."), cert. denied, 11-9109, 2012 WL 733887 (Apr. 2, 2012); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ("A district judge, however, may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence."); *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("Pulley properly contends that § 3553(a)(6) does not allow unwarranted sentencing disparities between co-defendants." (citing *Statham*, 581 F.3d at 556; *Bartlett*, 567 F.3d at 908–09))*; United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) (invalidating a sentence that resulted in unwarranted disparities between the sentences of the defendant and less culpable members of related conspiracies); *United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) (upholding as a legitimate generalized § 3553(a) consideration the district court's decision to compare defendant with his co-defendants and sentence him in accordance with his role); *United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("[A] district court may also properly account for unwarranted disparities between codefendants who are similarly situated,

and...the district court may compare defendants when deciding a sentence."); *United States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) ("It is not erroneous for the district court to have considered the 'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' when the statute specifically mandates such consideration."); *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (considering and rejecting an argument that a disparity between co-defendants' sentences was unwarranted), cert. denied, 131 S. Ct. 586 (2010).

See *United States v. Owens*, 996 F.3d 755 (6th Cir. 2021). Ian Owens appealed the district court's order denying his motion for compassionate release because it concluded that the disparity between his lengthy sentence and the sentence that he would receive following the passage of the First Step Act was not an extraordinary and compelling reason to support compassionate release. However, the Sixth Circuit held that, in making an individualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may include, along with other factors, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied. The circuit court also considered the fact that his lengthy sentence resulted from exercising his right to a trial and to his rehabilitative efforts as additional factors that considered together constitute an extraordinary and compelling reason meriting compassionate release. Therefore, the Sixth Circuit reversed the district court's order and remanded for reconsideration of Owens' motion for compassionate release.

In sum, absent the career offender enhancement; and without the 2-level firearm enhancement, Copeland's Total Offense Level would now be 14, in Criminal History Category of VI, establishing an advisory Guidelines range of 37 to 46 months, which is a lesser harsh sentence. At sentencing, the Court sentenced Copeland to 158-month sentence (80+% lower than the low end

23

range of the guidelines). Hence, Copeland should be sentenced to a term of 37 months' imprisonment.

The government may argue that a full resentencing is foreclosed by *Dillon v. United States*, 560 U.S. 817, 824-26, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010), where the Supreme Court found that full sentencing rehearings are not authorized by retroactive guideline reductions. However, the Fourth Circuit does not reach this argument because it finds that there is no need to do so. The court shall consider the § 3553(a) factors. See *United States v. Davis*, 679 F.3d 190 (4th Cir. 2012) (holding that in the context of a Rule 35(b) motion, a district court can consider § 3553(a) factors). See also: https://www.ussc.gov/sites/default/files/pdf/training/newsletters/ 2019-special_FIRST-STEP-Act.pdf (last viewed April 29, 2019) (noting in newsletter from the United States Sentencing Commission that courts will have to decide whether a resentencing under the Act is a plenary resentencing proceeding or a more limited resentencing and stating "In either instance, the Act made no changes to 18 U.S.C. § 3553(a), so the courts should consider the guidelines and policy statements, along with other 3553(a) factors, during the resentencing.")

District courts enjoy substantial discretion to consider all relevant information at a sentencing hearing. That discretion extends to subsequent hearings modifying sentencing, as well. The First Step Act preserves this discretion, allowing the district court to reduce sentences based not only on the changes to sentencing ranges, but also on other legal or factual changes that have occurred since the original sentencing.

Finally, Copeland asserts that his sentence in 2020 is now disparate relative to Defendants being sentenced today under a different sentencing structure (after the passage of the FSA 2018). As his 2020 sentence resulted in a longer sentence, this could be deemed a miscarriage of justice.

Under 18 U.S.C. § 3582(c)(2), to modify Copeland's sentence, taking into account the advisory nature of the guidelines after *Booker* and the considerations set forth in 18 U.S.C. § 3553(a). The court should find that a sentence of time served is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law.

Finally, Copeland asserts that the increase in the calculation of his sentencing range based on career offender enhancement, resulted in a longer sentence. If so, this could be deemed a miscarriage of justice.

### III. <u>CONCLUSION</u>

For the above and foregoing reasons, Copeland prays this Court would consider his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018, based upon the "extraordinary and compelling reasons", absent the career offender enhancement, and unwarranted disparity among Defendants being sentenced today under a different sentencing structure and resentence him to time served.

Respectfully submitted,

Dated: March 15, 2023

*Marty Copeland*
MARTY MARION COPELAND
REG. NO.72270-019
FCI EDGEFIELD
FEDERAL CORR. INSTITUTION
P.O. BOX 725
EDGEFIELD, SC 29824
Appearing *Pro Se*

25

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2023, I mailed a true and correct copy of the above and foregoing Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 was sent via U.S. Mail, postage prepaid, to Channell Veena Singh, at DOJ-USAO, Criminal Division, 22 Barnard Street, Savannah, GA 30334.

*Marty Copeland*
MARTY MARION COPELAND

MARTY MARION COPELAND
REG. NO.72270-019
FCI EDGEFIELD
FEDERAL CORR. INSTITUTION
P.O. BOX 725
EDGEFIELD, SC 29824

March 15, 2023

Mr. John E. Triplett
Clerk of Court
U.S. District Court
Southern District of Georgia
Augusta Division
600 James Brown Blvd.
Augusta, GA 30901

      RE:   *Copeland v. United States*
              Crim No. 1:18-cr-00074-JRH-BKE-1

Dear Mr. Triplett:

Enclosed please find and accept for filing Movant's Motion for Compassionate Release/Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018. Please submit this document to the Court.

Thank you for your assistance in this matter.

                    Sincerely,

                    *Marty Copeland*
                    MARTY MARION COPELAND
                    Appearing *Pro Se*

*Encl. as noted*

Marty Marion Copeland
72270-019
Federal Correctional Institution
Edgefield, SC 29824
P.O. BOX 725



Mr. John E. Triplett
Clerk of Court
U.S. District Court
Augusta Divison
600 James Brown Blvd.
Augusta, GA 30901